**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HC2 HOLDINGS 2, INC.; CONTINENTAL
GENERAL INSURANCE COMPANY; and
LEO CAPITAL HOLDINGS LLC,

               Plaintiffs,

      v.

MOTORSPORT GAMES, INC. (f/k/a
MOTORSPORT GAMING US LLC); MIKE
ZOI; JONATHAN NEW; DMITRY KOZKO;
and ALEX ROTHBERT,

           Defendants.

Case No. 21-cv-00165-RGA

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: May 17, 2021

OF COUNSEL

Brian L. Schwalb
George Kostolampros
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, D.C. 20001

    -and-

Edmund M. O'Toole
Dakota Kann
**VENABLE LLP**
1290 Avenue of the Americas
New York, NY 10104

Daniel A. O'Brien (No. 4897)
**VENABLE LLP**
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 298-3523
Fax: (302) 298-3550
daobrien@venable.com

*Counsel for Defendants*

i

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT .................................................................................1

STATEMENT OF FACTS ....................................................................................3

STANDARD FOR DISMISSAL.............................................................................7

ARGUMENT .......................................................................................................9

    I.    THE AMENDED COMPLAINT FAILS TO STATE A VIOLATION
         OF THE FEDERAL SECURITIES LAWS................................................9

         A.    Plaintiffs' Theory of Reliance is Implausible and Contradicted by
              Plaintiffs' Own Representations. ......................................................9

         B.    Plaintiffs Have Suffered No Economic Loss and Cannot Establish
              Loss Causation. ............................................................................12

         C.    The Amended Complaint Alleges no Actionable Misstatements or
              Omissions Regarding 704Games. ..................................................13

         D.    Plaintiffs' Scienter Allegations Are Purely Conclusory. ................17

    II.    Plaintiffs' Added Scheme Liability Claim under Rule 10b-5(a) and (c)
         Fails for the Same Reasons. ...............................................................18

    III.    PLAINTIFFS' SECTION 20A AND SECTION 20(a) CLAIMS
          MUST BE DISMISSED. ......................................................................19

    IV.    THE COMMON LAW CLAIMS SHOULD BE DISMISSED................................20

         A.    All of the Common Law Claims Are Superseded, Waived, and
              Released by the 2020 SPAs. ..........................................................20

         B.    The Fraudulent Inducement Claim (Count V) Lacks the Required
              Elements and Fails to Allege a Duty to Speak Regarding
              Motorsport.....................................................................................22

         C.    There Is No Breach of Fiduciary Duty (Count VI).........................22

          D.    The Unjust Enrichment Claim (Count VI) Is Negated by the 2020
              SPAs...............................................................................................24

CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abry Partners V.I.P. V. F&W Acq. LLC*,
  891 A.2d 1032 (Del. Ch. 2006)..................................................................................18

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)..............................................................................................6, 7

*Air Products and Chem., Inc v. Wiesemann*,
  237 F. Supp. 3d 192 (D. Del. 2017)......................................................13, 14, 20

*Airborne Health, Inc. v. Squid Soap, LP*,
  No. 4410-VCL, 2010 WL 2836391 (Del. Ch. July 20, 2010) ................................13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)..................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................5

*Brashears v. 1717 Capital Mgmt.*,
  No. 02-1534-KAJ, 2005 U.S. Dist. LEXIS 23471 (D. Del. Oct. 13, 2005) ............10

*Broz v. Cellular Inf. Sys., Inc.*,
  673 A.2d 148 (Del. 1996)........................................................................................19

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................................2, 6

*Chemical Bank v. Arthur Andersen & Co.*,
  726 F.2d 930 (2d Cir. 1984)....................................................................................12

*Chiarella v. United States*,
  445 U.S. 222 (1980)................................................................................................13

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014)....................................................................................15

*City of Roseville Emples. Ret. Sys. v. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010).........................................................................6

*Corp. Prop. Assoc. 14 Inc. v. CHR Holding Corp.*,
   2008 WL 963048 (Del. Ch. Apr. 10, 2008) ...............................................................13

*Crescent Int'l Inc. v. Avatar Comm., Inc.*,
   875 F.2d 943 (3d Cir. 1988).......................................................................................17

*In re Digex Sh. Lit.*,
   789 A.2d 1176 (Del. Ch. 2000)............................................................................19, 20

*In re Edward Jones & Co, L.P. Sec. Litig.*, No. 2:18-cv-00714-JAM-AC, 2019
   WL 2994486 (E.D. Cal. July 9, 2019) ......................................................................19

*In re Emerson Radio Corp. Sec. Litig.*,
   No. 03-4201 (JLL), 2005 U.S. Dist. LEXIS 49811 (D.N.J. Dec. 19, 2005)...........15

*In re Exxon Mobil Corp. Sec. Litig.*,
   387 F. Supp. 2d 407 (D.N.J. 2005) ..........................................................................20

*Greco v. Senchak*,
   627 Fed. App'x. 146 (3d Cir. 2015)..........................................................................16

*Gupta v. Wipro Ltd.*,
   749 Fed. App'x. 94 (3d Cir. 2018)...............................................................................5

*Guth v. Loft*,
   5. A.2d 503, 509 (Del. 1939) ....................................................................................19

*Johansson v. Ferrari*,
   No. 14-42-GMS, 2015 U.S. Dist. LEXIS 110578 (D. Del. Aug. 20, 2015) ............11

*Johnston v. HBO Film Mgmt.*,
   265 F.3d 178 (3d Cir. 2001).........................................................................................6

*Joyce v. Bobcat Oil & Gas, Inc.*,
   2008 U.S. Dist. LEXIS 27181 (M.D. Pa. Apr. 3, 2008) ..........................................10

*Leung v. Schuler*,
   No. 17089, 2000 WL 264328 (Del. Ch. Feb. 29, 2000) ..........................................20

*List v. Fashion Park, Inc.*,
   340 F.2d 457 (2d Cir. 1965).......................................................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)........................................................................................................6

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010)........................................................................7

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016)......................................................................5, 11

*Prairie Capital III, L.P. v. Double E Holding Corp.*,
132 A.3d 35 (Del. Ch., 2015).................................................................13, 17, 18

*Quinn v. Worldwide Communs., Inc.*,
No. 10-CV-01512, 2011 U.S. Dist. LEXIS 16080 (E.D. Pa. Feb. 16, 2011) ........................19

*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)................................................................................12

*Sapir v. Verback*,
No. 14-7331 (JLL) (JAD), 2016 U.S. Dist. LEXIS 15956 (D.N.J. Feb. 10,
2016) ..................................................................................................................2, 6

*Seven Investments, LLC v. AD Capital, LLC*,
32 A.3d 391 (Del. Ch. 2011)..........................................................16, 17, 18

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
19-cv-1813-LPS, 2020 WL 6484310 (D. Del. Nov. 4, 2020) .................................12

*In re Synchronoss Secs. Litig.*,
705 F. Supp. 2d 367 (D.N.J. 2010) ........................................................................15

*Takada v. Riot Blockchain, Inc.*, No. 18-02293 (FLW), 2020 WL 2079375 (D.N.J.
Apr. 30, 2020) ..................................................................................................19

*Tellabs Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007)..............................................................................................5

*In re UBS Ag Sec. Litig.*,
No. 07 Civ. 11225 (RJS), 2012 U.S. Dist. LEXIS 141449 (S.D.N.Y. Sept. 28,
2012) ..................................................................................................................15

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
176 F. Supp. 3d 387 (D. Del. 2016).....................................................................17

*Wiggs v. Summit Midstream Partners, LLC*,
2013 WL 1286180 (Del. Ch. Mar. 28, 2013).........................................................14

*Williams v. Globus Med., Inc.*,
869 F.3d 235 (3d Cir. 2017)..................................................................................10

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007)............................................................................2, 15

**Statutes**

8 DEL. CODE ANN. § 220.................................................................................................8

15 U.S.C. § 78u.........................................................................................1, 5, 10, 11

Securities Exchange Act, 15 U.S.C. 78a-78kk (1934)................................................ *passim*

Private Securities Litigation Reform Act, 15 U.S.C. 78a (1995) ........................................ *passim*

**Other Authorities**

FED. R. CIV. P. 9(b) .........................................................................1, 5, 14, 18

FED. R. CIV. P. 12(b)(6).......................................................................1, 5

Financial Accounting Standards Board's Accounting Standards Codification 810
    10-1 .........................................................................................8

Defendants Motorsport Games Inc. ("Motorsport"), Mike Zoi, Jonathan New, Alex Rothbert and Dmitry Kozko ("Defendants"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), submit this opening brief in support of their motion to dismiss the Amended Complaint [D.I. 14].

## SUMMARY OF ARGUMENT

In their initial Complaint filed on February 8, 2021, HC2 Holdings, Inc. ("HC2"), a sophisticated corporate investor in portfolio companies, and one of its subsidiaries, Continental General Insurance Company (collectively, "the HC2 Plaintiffs"), brought multiple securities and common law claims against Motorsport and three of its executives complaining that the HC2 Plaintiffs, in August 2020, had been misled into selling their 26.2% interest in 704Games, a privately owned video game developer, to Motorsport for $1.2 million. Those claims, mainly alleging securities and common law fraud, and breach of fiduciary duty, were legally and logically untenable and accordingly, were promptly met with a motion to dismiss.

Rather than attempt to defend that pleading, the HC2 Plaintiffs have filed an Amended Complaint, adding another plaintiff, former 704Games investor Leo Capital Holdings LLC ("Leo"), an additional individual defendant, Alex Rothbert, an additional section 10-b securities claim, and several new factual assertions. The newly-added facts principally relate to Leo's separate decision to sell its 3.0% interest in 704Games to Motorsport in October 2020, nearly two months after the HC2 Plaintiffs sold their shares and three months before Motorsport concluded a successful IPO in January 2021. None of the assertions in the Amended Complaint, however, introduce facts that remedy the legally infirm and factually implausible assertions in the initial complaint; some are actually damning to Plaintiffs' claims, and the others simply echo the same

unsustainable "fraud by hindsight" allegations that were fatal to the HC2 Plaintiffs' initial pleading.

Despite having never owned any legal or financial interest in Motorsport, Plaintiffs seek through this litigation to wrest a more than 50x return on their investments in *704Games*, alleging they were somehow duped into selling their 704Games shares at less than their fair market value because, according to Plaintiffs, 704Games was equivalent in value to Motorsport. Plaintiffs not only mix their 704Games apples with Motorsport oranges, but then seek to turn their 704Games apples into gold.

Plaintiffs' claims remain legally meritless and factually implausible. Plaintiffs purposefully conflate two different companies — Motorsport and 704Games — claiming that the value of Motorsport, as reflected in Motorsport's January 2021 IPO, is what 704Games was worth in August 2020, when the HC2 Plaintiffs elected to sell their minority interest in 704Games to Motorsport, or in October 2020, when Leo sold its 704Games shares. Further, Plaintiffs' contention that they were misled about the value of their 704Games shares based on misleading projections of what 704Games' future financial performance might be — or by professing willful blindness to Motorsport's stated plans for going public — are contradicted by facts that Plaintiffs have incorporated by reference into their Amended Complaint, including financial information available to them and unambiguous language in the Stock Purchase Agreements that Plaintiffs executed when selling their 704Games shares.

Because none of the eight counts in the Amended Complaint states a claim upon which relief may be granted, the Court should dismiss this case with prejudice.

## STATEMENT OF FACTS[1]

Plaintiff HC2 is a publicly traded company in the business of investing in a portfolio of subsidiaries, including Plaintiff Continental General Insurance Company. HC2 2020 10-K at 2 (attached hereto as Exhibit 1 to the Declaration of Brian L. Schwalb dated May 17, 2021 (the "Schwalb Decl.")). In 2014, HC2 invested in what would become 704Games, a non-public Delaware corporation that develops and publishes video games and which holds the exclusive license for video game development and publishing in connection with the NASCAR® racing franchise. Am. Compl. ¶¶ 6, 52. Leo invested in 704Games in 2016. Am. Compl. ¶ 8. Defendant Motorsport is a leading racing game developer, publisher, and ecosystem provider for motorsport racing in multiple segments throughout the world. *See* Am. Compl. Ex. 4 at 1 (Motorsport Prospectus). In 2018, Motorsport made an $11 million investment into 704Games and acquired 53.5% of its stock, as reflected in a stockholders' agreement executed in August 2018 by all of the 704Games shareholders (including Plaintiffs) (the "Stockholders' Agreement"), *id.* ¶¶ 11-12, 59-60; as a result, Plaintiffs' collective ownership of 704Games was reduced to 29.2%. *Id.* ¶¶ 3, 60.

Two years later, in August and October 2020, Motorsport entered into two "substantially identical" written Stock Purchase Agreements with the HC2 Plaintiffs and Leo, respectively (the "2020 SPAs"), for the purchase and sale of Plaintiffs' collective 29.2% shares of 704Games for

---

[1] The facts giving rise to this motion are properly drawn both from the Amended Complaint ("Am. Compl."), documents incorporated into it by reference, and legally required public disclosure documents filed with the SEC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining the incorporation by reference doctrine); *Sapir v. Verback*, No. 14-7331 (JLL) (JAD), 2016 U.S. Dist. LEXIS 15956, *34 (D.N.J. Feb. 10, 2016) (finding that on a motion to dismiss, a court may consider "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,' such as SEC filings, press releases, and earnings call transcripts" (quoting *Winer Family Tr. v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007)). Solely for purposes of this Motion, the facts alleged in the Amended Complaint are assumed to be true; in actuality, many of the allegations are false, incomplete, and misleading.

just over $1.3 million. *Id.* ¶¶ 20-21; Am. Compl. Exs. 2, 3. The 2020 SPAs include representations and warranties that Plaintiffs:

> (i) ha[d] sufficient knowledge and experience with and information about [Motorsport] (***including [Motorsport's] business objective and current efforts to consummate a liquidity event or an initial public offering of [Motorsport] as soon as practicable***) and [704Games] in order to be fully familiar with [Motorsport], [704Games] and its current business, operations, assets, finances, financial results, financial condition and prospects and so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement, (ii) ha[d] full access to all books and records of [704Games] and all of its contracts, agreements and documents, and (iii) [ ] had an opportunity to ask questions of, and receive answers from, representatives of [Motorsport] and [704Games] regarding [Motorsport], [704Games] and its current business, operations, assets, financing, operating results, financial condition and prospects in order to make an informed decision to sell the Shares.

Am. Compl., Exs. 2, 3 § 4(h) (emphasis added). The 2020 SPAs also each contain a broad release, *id.* § 9, and a merger clause, *id.* § 12. Consistent with the disclosure in the 2020 SPAs, nearly five months later, on January 13, 2021, Motorsport completed an IPO. Am. Compl. ¶ 22. Despite Plaintiffs' efforts to conflate the separate Motorsport and 704Games entities, at no time has there been an IPO of 704Games, which remains a separate, privately owned subsidiary of Motorsport.

Plaintiffs' claims principally sound in fraud and arise from two categories of allegations, the purported "704Games Misrepresentations" and the purported "Motorsport Omissions."[2]  The 704 Games Misrepresentations consist of: (1) the 2020 budget for 704Games distributed to the HC2 Plaintiffs in December 2019 (9 months before the Plaintiffs sold their 704Games shares) estimating that 704Games would generate a 2020 EBITDA loss of $3,094,400; (2) the 2021 Monthly Forecast distributed to the HC2 Plaintiffs in advance of the June 4, 2020 704Games board

---

[2]       Despite the full release of this claim in the 2020 SPA, Plaintiffs also allege that Motorsport breached the 2018 Stockholders' Agreement by failing to provide timely financial statements for 704Games that complied with GAAP. Am. Compl. ¶¶ 62, 70-72, 99-101, 118, 283-89.

meeting (more than 2 months before Plaintiffs sold their 704Games shares) projecting that 704Games would experience a cash shortfall 13 months later, in July 2021; and (3) Defendants' statements to the HC2 Plaintiffs at the June 5, 2020 704Games board meeting and in subsequent communications  stating that a future capital call for 704Games was likely. *Id.* ¶¶ 79-82, 98-112, 113-122.[3] None of these claims is based on plausible allegations of any affirmative misstatements of a present or past fact. Rather, the speculation as to fraud comes only in hindsight derived from later events: 704Games' improved financial performance that took place later in 2020; the future, ultimately successful Motorsport IPO in January 2021; and March 2021 litigation settlements that Motorsport reached with two other former 704Games shareholders — PlayFast and Ascend — nearly two months after the Motorsport IPO, five months after Leo agreed to sell its 704Games shares, and seven months after the HC2 Plaintiffs agreed to sell their 704Games shares. *Id.* ¶¶ 84, 89, 112, 121, 205-14.

The Motorsport Omissions consist of information relating to Motorsport — not 704Games — that purportedly was not disclosed to Plaintiffs prior to the 2020 SPAs, including: (1) Motorsport's intention to effect an IPO in early 2021 (*id.* ¶¶ 151, 152, 154, 178); (2) Motorsport's 2020 agreements with its senior executives that included compensation incentives in the event a Motorsport IPO could be achieved (*id.* ¶¶ 84, 85, 87-91); (3) a $10 million promissory note that Motorsport obtained from its parent, Motorsport Network (*id.* ¶¶ 92-97); and (4) a series of 2020 promotional and licensing agreements that Motorsport pursued with entities in Formula One and

---

[3]     Despite adding Leo to the Amended Complaint as an additional plaintiff, there is no allegation that any of the 704Games Misstatements were made to Leo directly, and the only suggestion that Leo received or relied on any of these alleged misstatements is the vague allegation that, at some point in time, "Leo received a copy of the June 2020 BOD Presentation." *Id.* ¶ 110. Plaintiffs concede that Leo did not attend either the November 2019 or June 2020 board meetings. *Id.* ¶¶ 76, 110. Similarly, there are no allegations whatsoever about any communications between Defendants and Leo about a potential future capital call.

European racing segments unrelated to NASCAR (*id.* ¶¶ 133-47). Plaintiffs assert that, had this Motorsport information been provided to, or better understood by, Plaintiffs prior to the 2020 SPAs, they would not have sold their 704Games shares to Motorsport for $1.3 million. *See, e.g.*, *id.* ¶¶ 232-235.

With the Amended Complaint, Plaintiffs expand these core assertions with additional allegations, none of which supports their claims for relief. First, they suggest that Motorsport downplayed the future prospects for one of 704Games' summer 2020 video games, known as "NASCAR HEAT 5." *See, e.g.*, *id.* ¶¶ 102-112, 131-32; 190-93. Plaintiffs claim that when Motorsport circulated its board presentation materials on June 4, 2020, it stated that "NASCAR HEAT 5['s] . . . 'pre-sales are struggling'" when, in fact, the product later proved to be a great success after its July 2020 launch. *See, e.g.*, *id.* ¶¶ 103-04, 132. However, there is no allegation (i) that Motorsport's pre-launch characterization of pre-sales of the new video game was knowingly false when made, (ii) at what point Motorsport gathered enough actual sales data to establish that the product would exceed earlier forecasts, or (iii) that Plaintiffs ever made any request for sales information of any kind relating to the actual sales performance of NASCAR HEAT 5 before they decided to sell their shares of 704Games (and, in the 2020 SPAs, represent they had full access to such information).

The second set of "new" facts concern Leo's decision to sell its 704Games shares in October 2020. *See, e.g.*, *id.* ¶¶ 185-97. Plaintiffs concede that, before agreeing to sell its shares, Leo obtained 704Games' 2020 financial information prepared by Motorsport showing "[f]or the first seven months of 2020, the Company had positive net income of $3,286,652," largely due to the first month of sales of NASCAR HEAT 5. *Id*. ¶ 191. This tracks Plaintiffs' similar admissions that Defendants had earlier reported "that the Company would be modestly profitable in 2020 . . .". *Id.*

6

¶¶ 23, 106. All of the Plaintiffs thus concede that they knew 704Games was profitable before they decided to sell their shares. Thus, Plaintiffs' Amended Complaint rests on the non-specific, non-actionable assertion that Defendants' 2020 mid-year financial forecasting that 704Games "would be modestly profitable" was knowingly false when made because the company actually went on to make "a significant profit." *Id.*

## STANDARD FOR DISMISSAL

Plaintiffs' Amended Complaint contains eight counts: Counts I, II and IV assert violations of Section 10(b), Rule 10b-5(a) and (c), and Section 20A of the 1934 Exchange Act; Count III asserts Section 20(a) control person liability against Defendants Zoi, Kozko and New (the "Federal Securities Claims"). Count V asserts that Motorsport failed to provide Plaintiffs with required financial information in breach of the 2018 704Games' Stockholders' Agreement; and Counts VI, VII and VIII assert common law fraudulent inducement, breach of fiduciary duty and unjust enrichment against all the Defendants (the "Common Law Claims").

To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA, a securities fraud complaint must specify each alleged misstatement or omission, explain why it is false or misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted" with scienter. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u-4(b)(1), (2)); *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016). A complaint will only survive a motion to dismiss "if a reasonable person would deem the inference of scienter cogent and at least as

7

compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

Although most if not all of the fraud-related allegations in the original Complaint were defectively pled as being "[u]pon information and belief," the Amended Complaint dilutes these caveats even further, asserting only "that the facts alleged support an inference," or "that it is fair to infer that" or "it is plausible" that these purported misrepresentations or omissions were false when made (*id.* ¶¶ 78, 82, 84, 94, 96, 111, 119, 120, 149). These qualifiers fail to meet the pleading requirements of Rule 9(b) and the PSLRA. *See Tellabs*, 551 U.S. at 324.

In addition, well-pleaded allegations are assumed to be true only to the extent not contradicted by other allegations or documents incorporated by reference, including filings with the SEC. *See id.* at 322-23; *Gupta v. Wipro Ltd.*, 749 Fed. App'x. 94, 97 (3d Cir. 2018). Given Plaintiffs' reliance on multiple documents referenced in the Amended Complaint, the facts that the Court may appropriately consider in resolving this Rule 12(b)(6) motion are properly drawn from the pleading, documents incorporated into it by reference, and legally required public disclosure documents filed with the SEC.[4] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (explaining the incorporation by reference doctrine); *Sapir*, 2016 U.S. Dist. LEXIS 15956 at *34 (same).

---

[4]      As set forth more fully herein, these facts include representations and warranties, a full release and an integration clause that Plaintiffs expressly agreed to in the 2020 SPAs, the budget and 704Games Board materials provided to Plaintiffs, the "Historical Financials" and "August 2020 Forecast" prepared by Motorsport and provided to Leo and the Motorsport IPO prospectus, all of which are referenced in the Amended Complaint.

## ARGUMENT

## I.   THE AMENDED COMPLAINT FAILS TO STATE A VIOLATION OF THE FEDERAL SECURITIES LAWS.

In order to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5(b) ("Rule 10b-5"), a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). Plaintiffs' Federal Securities Claims fail to meet these required elements.

### A.   Plaintiffs' Theory of Reliance is Implausible and Contradicted by Plaintiffs' Own Representations.

Based upon the purported Motorsport Omissions, Plaintiffs claim that they are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Courts, however, have refused to apply the *Affiliated Ute* presumption unless the fraud claims are based primarily or exclusively on omissions. *See, e.g.*, *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 192 (3d Cir. 2001); *City of Roseville Emples. Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 393 (D. Del. 2010). According to Plaintiffs' complaint, however, their Federal Securities Claims rest with both misrepresentations and omissions that "concerned important information and altered the total mix of information made available to Plaintiffs in deciding to sell their shares." Am. Compl. ¶ 111. Accordingly, because Plaintiffs' case does not rest exclusively or primarily on omissions, the *Affiliated Ute* presumption of reliance does not apply.

Even if the *Affiliated Ute* presumption were applicable, the presumption is rebutted by Plaintiffs' very own statements in the 2020 SPAs. *See In re Merrill Lynch Auction Rate Sec. Litig.*,

9

704 F. Supp. 2d 378, 398 (S.D.N.Y. 2010) (finding on a motion to dismiss that, even if the *Affiliated Ute* presumption applied, defendants' disclosures to the market rebutted any presumption of reliance). Plaintiffs admit that before they sold their 704Games shares, they knew that 704Games was profitable and estimated that 704Games would be profitable for 2020, 2021 and 2022. Am. Compl. ¶¶ 23, 106, 190-92; *See* June 2020 Board Presentation at 15 (attached hereto as Exhibit 2 to the Schwalb Decl.). Additionally, Plaintiffs acknowledged in the 2020 SPAs that they were aware that Motorsport was planning an IPO. These facts as alleged and incorporated within Plaintiffs' own pleading rebut any presumption of reliance under *Affiliated Ute*.

Plaintiffs' further contention that, as minority shareholders, they were not positioned to ascertain "independently the truth, falsity, or completeness of Defendants' representations concerning [704Games'] results and prospects," Am. Compl. ¶ 175, is implausible on its face. Aside from being sophisticated commercial actors in the business of purchasing, owning and operating portfolio companies, in the 2020 SPAs, Plaintiffs, who were represented by knowledgeable legal counsel, expressly represented and warranted that they "ha[d] full access to all books and records" of 704Games "and all of its contracts, agreements and documents," had an opportunity to "ask questions of, and receive answers from" representatives of Motorsport and 704Games, and "had sufficient knowledge and experience" regarding 704Games and "its current business, operations, assets, finances, financial results, financial condition and prospects so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement." Am. Compl. Exs. 2, 3 § 4(h). Furthermore, as 704Games shareholders and board members, Plaintiffs had access to the books and records of the company. 8 DEL. CODE ANN. § 220.

The HC2 Plaintiffs' allegations that before agreeing to sell their shares, they had repeatedly requested 704Games' financial statements prepared in accordance with GAAP but had not been

provided with such financials further undercuts any claim of reliance. Plaintiffs allege that Defendants' purported failure to provide GAAP accounting statements violated the 2018 704Games' Stockholders' Agreement; but the HC2 Plaintiffs made these requests for GAAP financial statements ***before*** agreeing to sell their 704 Games shares; ***before*** allegedly being asked to provide more capital to 704Games; ***before*** representing in the 2020 SPA that they had full access to the 704Games' books and records; and ***before*** releasing Motorsport from "any and all claims . . . which the Seller or Releasors or any of them now have or had or may hereafter have against either [704Games] or [Motorsport] . . ." Am. Compl. Ex. 2 § 9. Thus, as set forth below, and given that their purported lack of access to GAAP financials is the gravamen of their breach of contract claim, Plaintiffs released any such claims under the Stockholders' Agreement and proceeded with selling their shares pursuant to the SPAs. Moreover, having alleged that they unsuccessfully sought information from 704Games ***before*** agreeing to sell their 704Games shares renders Plaintiffs' claims that they were somehow "duped" into selling their shares totally implausible.

Finally, despite acknowledging in the 2020 SPAs that Motorsport was pursuing an IPO as soon as practicable, Am. Compl. Ex. 2, 3 § 4(h), not to mention Plaintiffs' well-documented business savvy, they allege that they mistakenly believed that a Motorsport IPO would not include 704Games. *Id.* ¶¶ 25, 152, 183. But any IPO of Motorsport would necessarily include 704Games because Motorsport was (and is) the majority shareholder of 704Games. *See* Financial Accounting Standards Board's Accounting Standards Codification 810-10-1 (providing that consolidated financial statements are "necessary for a fair presentation when one of the entities in the consolidated group directly or indirectly has a controlling financial interest in the other entities"). It is not plausible that HC2, a sophisticated publicly traded company with 2,800 employees in the

business of investing in companies and making regular SEC filings, would not know that any IPO

of Motorsport would include 704Games as a key subsidiary of Motorsport.[5]

> **B.     Plaintiffs Have Suffered No Economic Loss and Cannot Establish Loss Causation.**

Plaintiffs allege that based on Motorsport's peak trading price on its first day of trading,

Plaintiffs' 29.2% stake in 704Games was worth $230 million, as compared to the $1.3 million they

sold those shares for five months earlier. Am. Compl. ¶ 198. Plaintiffs, however, were never

shareholders of Motorsport and, accordingly, they have not alleged an actual economic loss

because their alleged loss cannot be derived from the price of a stock they never owned.

Motorsport's stock price in January 2021 has no relevance to the value of Plaintiffs' minority

shares in a different company, 704Games, at a different time (August 2020).

Moreover, Plaintiffs' cobbled-together theory that the value of Motorsport's IPO was

entirely attributable to 704Games' NASCAR business, Am. Compl. ¶¶ 86, 87, 152-53, ignores the

Motorsport IPO Prospectus itself, cited in the Amended Complaint which makes clear, among

other things, that in addition to NASCAR, Motorsport had a joint venture with the organizer of the

"iconic 24 Hours of Le Mans endurance race" and a May 2020 "multi-year license to exclusively

publish and develop video games for the British Touring Car Championship series." Am. Compl.

Ex. 4 at 2. The Prospectus also discusses how Motorsport's relationship with its parent company,

Motorsport Network, provides a unique value to Motorsport by allowing it to "market,

---

[5]       This assertion also is contradicted by Plaintiffs' own allegations that Motorsport's financial condition "was based almost exclusively on the financials of 704Games" and that "essentially all of the assets of Motorsport are derived from its interest in [704Games] . . ." Am. Compl. ¶¶ 23, 153, 163. Plaintiffs contradict themselves by admitting in the Amended Complaint that they *did* conflate 704Games' value with that of Motorsport, just before suggesting this alleged fact on which they relied was somehow concealed from them. Compare ¶ 152 ("Based on Defendants' representations that [704Games] was Motorsport's only significant asset … HC2 and Continental believed that such a liquidity event could not be successful unless Defendants planned a liquidity event for Motorsport Network…") with ¶ 153 ("Defendants concealed that the transaction would be based almost exclusively on the value of 704Games…").

communicate, and engage" with Motorsport Network's over 50-million customer base and provide Motorsport with the "ability to leverage the broad industry relationships and market clout of Motorsport Network, particularly due to its vast audience and reach." *Id.* at 71. The value provided by Motorsport Network and Motorsport's joint ventures and exclusive licensing agreements with non-NASCAR related entities is entirely independent of Motorsport's stake in 704Games, which was focused exclusively on NASCAR. Where economic loss has not been properly alleged, the pleading requirements of Rule 10b-5 have not been met and the Complaint must be dismissed. *Brashears v. 1717 Capital Mgmt.*, No. 02-1534-KAJ, 2005 U.S. Dist. LEXIS 23471, at *16-17 (D. Del. Oct. 13, 2005) (dismissing complaint which failed to allege economic loss).

Because the Amended Complaint fails to allege that Plaintiffs suffered an economic loss by selling their 704Games shares to Motorsport, Plaintiffs also cannot establish loss causation. *See, e.g.*, *id.* at *16-17 (finding that because plaintiff suffered no economic harm, plaintiff also could not establish loss causation); *Joyce v. Bobcat Oil & Gas, Inc.*, 2008 U.S. Dist. LEXIS 27181, at *16-23 (M.D. Pa. Apr. 3, 2008) (same).

### C. The Amended Complaint Alleges no Actionable Misstatements or Omissions Regarding 704Games.

As to the purported 704Games Misrepresentations, all were anticipatory in nature: "a projection of revenues, . . . or other financial items," a "statement of the plans and objectives of management for future operations," and a "statement of future economic performance," squarely fitting into the statutory definition of a forward-looking statement. 15 U.S.C. § 78u-5(i)(l); Am. Compl. ¶¶ 74-76, 79-84, 102-112, 131-32, 150, 192-93; *see also Williams v. Globus Med., Inc.*, 869 F.3d 235, 245-46 (3d Cir. 2017) (finding forward-looking revenue projections protected under the PSLRA's safe harbor provision); *Johansson v. Ferrari*, No. 14-42-GMS, 2015 U.S. Dist.

13

LEXIS 110578, at *28-31 (D. Del. Aug. 20, 2015) (finding cash projections to be forward-looking statements protected under the PSLRA's safe harbor).

Defendants' "forward-looking" statements about 704Games' financial performance, including projected cash shortfalls and needs for capital, are protected under the safe harbor provision of the PSLRA where, as here, the Amended Complaint fails to sufficiently plead that each "forward-looking statement 'was made with actual knowledge by [the speaker] that the statement was false or misleading.'" 15 U.S.C. § 78u-5(c); *see OFI Asset Mgmt*, 834 F.3d at 490. In attempting to establish *actual* knowledge of falsity, Plaintiffs rely on pure speculation based on their allegations that: (1) the Kozko and New employment agreements (entered into in January 2020) provided for *potential* incentive compensation *if* there was a successful IPO of Motorsport; (2) 704Games' actual 2020 performance exceeded the earlier projections; and (3) the success of Motorsport's January 2021 IPO, again occurring months after the alleged misstatements were made. Initially, Motorsport's stated goal in its IPO prospectus of using the IPO's net proceeds for "working capital and general corporate purposes," Am. Compl. Ex. 4 at 10, is completely consistent with Defendants' purported misstatements regarding a projected cash shortfall in 2021 for Motorsport's subsidiary, 704Games.

Additionally, nothing in the Kozko or New Employment Agreements plausibly suggests that Defendants knew that statements regarding 704Games's financial projections were false when made. *See* Am. Compl. Ex. 5; New Employment Agreement (attached hereto as <u>Exhibit 3</u> to the Schwalb. Decl.). There is no information as to the financial condition of 704Games within the Kozko or New Employment Agreements. The potential incentive payments in those contracts were just that — "potential." Moreover, that a potential Motorsport IPO would result in incentive

compensation to Motorsport's executives does not in any way conflict with statements made at the same time regarding 704Games's then financial condition and prospects.

Plaintiffs' attempt to find fraud in the performance *estimates* for 2020 just because 704Games's actual results for 2020 proved those earlier projections to be wrong, is nothing more than a claim of fraud by hindsight. "'[F]raud by hindsight' has been 'long rejected,' as a matter of law, as a basis for liability." *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 19-cv-1813-LPS, 2020 WL 6484310, at *13 (D. Del. Nov. 4, 2020) (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004)). Furthermore, as mentioned above, the HC2 Plaintiffs received revised 704Games financial projections, estimating that 704Games would be profitable in 2020, 2021 and 2022, in June 2020 — before selling their shares — thus making their fraud contentions even more implausible. *See* Exhibit 2 at 15.[6]

Additionally, the success of Motorsport's IPO — which did not occur until January 2021— does not support an inference that statements made in 2020 about the future financial performance of 704Games were knowingly false when made. Motorsport and 704Games are two different companies, and any omissions regarding Motorsport or its potential IPO cannot form the basis of an alleged fraud concerning the sale of 704Games shares. *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 941 (2d Cir. 1984) (finding that Arthur Andersen's alleged misstatements regarding parent company's finances did not subject it to liability for losses caused by subsidiary's stock since Arthur Andersen did not make any misstatements regarding subsidiary).

Aside from the fact that Plaintiffs' own Amended Complaint (and their express representations in the 2020 SPAs) contradict their self-serving allegation that they did not know

---

[6]     For its part, Leo received 704Games financials for 2019 and the first 6 months of 2020 on August 21, 2020, nearly two months before it decided to sell its shares. Am. Compl. ¶¶ 190-92.

about Motorsport's planned IPO, the Amended Complaint fails to plead facts that, if true, would support the conclusion that Defendants had a duty to provide Plaintiffs with material information ***about Motorsport***. Plaintiffs were not shareholders of Motorsport; they were shareholders of 704Games. When an allegation of fraud under Section 10(b) is based upon a nondisclosure, there can be no fraud absent a duty to speak. *Chiarella v. United States*, 445 U.S. 222, 235 (1980). Plaintiffs contend that because Motorsport was the majority shareholder in 704Games, and because 704Games was generating the majority of Motorsport's revenue, Defendants owed Plaintiffs a duty to speak not only about information regarding 704Games, but also as to information regarding Motorsport. Am. Compl. ¶¶ 25, 86-88, 91. That is not the law. It is axiomatic that to the extent there is a duty to speak, that duty is to speak regarding "material facts affecting the value of the stock [being sold]." *List v. Fashion Park, Inc.*, 340 F.2d 457, 461 (2d Cir. 1965).

Furthermore, as sophisticated parties negotiating an arms-length transaction for the sale of 704Games stock, Plaintiffs cannot plausibly allege that Motorsport owed them a duty to share information about Motorsport. In *Air Products and Chem., Inc v. Wiesemann*, 237 F. Supp. 3d. 192, 215-15 (D. Del. 2017), following a bench trial involving a stock purchase agreement, Judge Robinson dismissed plaintiff's common law fraud claims finding, *inter alia*, that the plaintiff had failed to establish any material misrepresentations or omissions prompted by a duty of disclosure:

> Products also has not shown that Wiesemann and Craft had a duty to speak. (D.I. 207 at 46). An affirmative obligation to speak arises only where there is a fiduciary or other special relationship of trust and confidence between the parties. *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch., 2015). "***In an arms' length contractual setting like the negotiation of the SPA, a party has no affirmative duty to speak.***" *Id.*; *Corp. Prop. Assoc. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048, at *6 n. 51 (Del. Ch. Apr. 10, 2008) (explaining that a party to a business transaction is not liable for harm caused by a failure to disclose facts he knows the other party would regard as material); *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *9 (Del. Ch. July 20, 2010) ("A party has no affirmative disclosure obligation to 'an arms' length counter-party negotiating

16

> across the table . . . .”). Once a party in an arms’ length negotiation does speak, it cannot do so partially or obliquely such that the statements become misleading. *Prairie Capital*, 132 A.3d at 52. But Air Products has not identified any partial disclosures that were misleading . . . . Active concealment requires more than mere silence. *Wiggs v. Summit Midstream Partners, LLC*, 2013 WL 1286180, at *11 (Del. Ch. Mar. 28, 2013).

*Id.* (emphasis added). The same is true here. Motorsport had no duty to disclose information to parties who were not Motorsport shareholders about its — as opposed to 704Games’s — potential IPO. Notably, Plaintiffs do not allege they made any inquiries about it, despite affirmatively acknowledging in the 2020 SPAs that a Motorsport IPO was likely.

### D.   Plaintiffs’ Scienter Allegations Are Purely Conclusory.

Even under a standard of recklessness, which does not apply to forward-looking statements protected by the PSLRA safe harbor, the Amended Complaint fails to plead scienter as to the alleged misstatements regarding 704Games’s financial projections. Plaintiffs allege that “Defendants knowingly and intentionally (or at the very least recklessly) made the material misrepresentations and omissions,” and then simply reiterate their conclusory allegations. *See* Am. Compl. ¶ 149. Such bald conclusory allegations do not satisfy the strictures of Rule 9(b), let alone the heightened pleading standards under the PSLRA.

Plaintiffs’ conclusory allegations also fail to account for other “more compelling” reasons for 704Games’s better-than-projected revenues, such as an unexpected rise in the sales of the NASCAR Heat 5 videogame and positive market conditions for video gaming caused by the Covid-19 pandemic. As set forth in Motorsport’s IPO prospectus, Motorsport specifically disclosed that:

> During the COVID-19 outbreak, demand for our games has generally increased, which we believe is primarily attributable to a higher number of consumers staying at home due to COVID-19 related restrictions. Similarly, there has been a significant increase in viewership of our esports events since the initial impact of

the virus, as these events began to air on both digital and linear platforms, particularly as we were able to attract many of the top 'real world' motorsport stars to compete.

Am. Compl. Ex. 4 at 53. The Covid-19 pandemic started in March 2020, after many of the statements regarding 704Games' anticipated future performance had been made and has continued to date — long after Plaintiffs agreed to sell their 704Games shares. Courts have frequently found that large-scale economic shifts can provide more cogent and compelling inferences than the types of conclusory and speculative scienter allegations Plaintiffs have made. *See, e.g.*, *In re Synchronoss Secs. Litig.*, 705 F. Supp. 2d 367, 418-19 (D.N.J. 2010) (dismissing complaint where plaintiffs' claims relating to alleged misstatements could be the result of "an infinite number of reasons," such as "the overall decline in the nation's economy in the beginning of 2008"); *In re UBS Ag Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 U.S. Dist. LEXIS 141449, at *70 (S.D.N.Y. Sept. 28, 2012) (finding that the "more compelling inference" was that the defendants "did not anticipate that there would be a market-wide downturn impacting its various businesses").

Finally, Plaintiffs do not plausibly plead scienter for each separate Defendant. The Third Circuit has explicitly rejected "group pleading" as incompatible with the PSLRA's requirement that plaintiffs "specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." *Winer Family Trust*, 503 F.3d at 335-37.

## II.   Plaintiffs' Added Scheme Liability Claim under Rule 10b-5(a) and (c) Fails for the Same Reasons.

Plaintiffs have apparently added this new claim to address the fact they have not pled with particularity each defendant's role in the alleged misstatements or omissions. In order to plead scheme liability, however, Plaintiffs must allege "Defendants 'committed a deceptive or manipulative act,' in addition to the other standard elements of a Section 10(b) violation: scienter;

connection with the purchase or sale of securities; reliance; economic loss; and loss causation." *Takada v. Riot Blockchain, Inc.*, No. 18-02293 (FLW), 2020 WL 2079375, at \*14 (D.N.J. Apr. 30, 2020). Claims under subsections (a) and (c) are also subject to the PSLRA and plaintiffs must set forth "'what manipulative [or deceptive] acts were performed, which defendants performed them, when the manipulative [or deceptive] acts were performed and what effect the scheme had on the securities at issue.'" *Id*. Rather than actually plead these elements, Plaintiffs simply rely on the very same conclusory, non-specific allegations that form the basis of their defective material misstatements and omissions claim. Accordingly, Plaintiffs' scheme liability claim fails for the very same reasons as their material misstatements and omissions claims fail. *See In re Edward Jones & Co, L.P. Sec. Litig.*, No. 2:18-cv-00714-JAM-AC, 2019 WL 2994486, at \*7 (E.D. Cal. July 9, 2019) (dismissing scheme liability claim as "nothing more than a repackaging of the Rule 10b-5(b) omissions claims").

III.     **PLAINTIFFS' SECTION 20A AND SECTION 20(a) CLAIMS MUST BE DISMISSED.**

Because Plaintiffs have not pleaded a Section 10(b) and Rule 10b-5 claim, Plaintiffs' Section 20A and 20(a) claims — which are predicated upon their other Federal Securities Claims — must also be dismissed. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014) ("Because the Funds have failed to adequately plead a predicate section 10(b) violation, their section 20(a) claim must be dismissed."); *In re Emerson Radio Corp. Sec. Litig.*, No. 03-4201 (JLL), 2005 U.S. Dist. LEXIS 49811, at \*57 (D.N.J. Dec. 19, 2005) (dismissing Section 20A claim where plaintiffs failed to plead a predicate violation of Section 10(b) or Rule 10b-5).

19

## IV.    THE COMMON LAW CLAIMS SHOULD BE DISMISSED.

### A.    All of the Common Law Claims Are Superseded, Waived, and Released by the 2020 SPAs.

In addition to the affirmative representations that Plaintiffs made in section 4(h) of the 2020 SPAs that, before agreeing to sell their 704Games shares, they had been provided with full access to the books and records of 704Games, they also negotiated and agreed to two additional provisions in the 2020 SPAs that are fatal to their Common Law Claims:

> ➢ In Section 9, Plaintiffs gave a comprehensive release of "any and all claims, debts obligations, and liabilities, whether known or unknown, contingent or non-contingent, at law or in equity, in each case arising from or in connection with, or relating to, the Company [704Games], the Company's business, the Shares or any agreements or obligations of the Company and/or Seller's ownership of the Company…which the Seller or Releasors or any of them now have or had or may hereafter have against either the Company or the Buyer Releasees [Motorsport, its officers, etc.], or any of them."

> ➢ Additionally, Section 12 provides that: "This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter. There are no agreements, warranties, covenants or undertakings regarding the subject matter of this Agreement other than those expressly set forth herein."

Am. Compl. Exs. 2, 3. Read together, these contractual provisions negate all of Plaintiffs' common law claims.[7] *See Seven Investments, LLC v. AD Capital, LLC*, 32 A.3d 391 (Del. Ch. 2011) (dismissing contract, fraudulent inducement, breach of fiduciary duty and unjust enrichment claims as barred by terms of general release); *Prairie Capital III, L.P. v. Double E Holding Corp.*,

---

[7]    Plaintiffs' breach of contract claim, which is based upon an alleged breach of the 2018 704 Games Stockholders' Agreement, should also be dismissed based on the forum selection clause within that agreement designating the federal or state court sitting in Miami-Dade County, Florida as the exclusive jurisdiction with respect to any dispute arising from that agreement. Am. Compl. ¶¶ 284-89, Ex. 1 § 13.8; *see Crescent Int'l Inc. v. Avatar Comm., Inc.*, 875 F.2d 943 (3d Cir. 1988) (affirming District Court dismissal where contractual forum selection clause "provided that 'any litigation upon any of [its] claims shall be maintained in a state or federal court in Miami'").

132 A.3d 35 (Del. Ch. 2015) (dismissing extra-contractual fraudulent inducement claim due to contractual waiver and integration provisions); *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387, 400-03 (D. Del. 2016) (dismissing extra-contractual common law fraud claims due to merger clause in contract and adopting reasoning in *Prairie Capital*).

*Seven Investments, LLC* is instructive. There, a party to a joint venture agreement buffeted by a history of questionable dealings with its counter-party entered into a "Termination Agreement" to settle all outstanding claims between the parties and, in exchange for a negotiated payment, gave a full and general release of any and all claims against the defendant. 32 A.3d at 394-95. Later, upon learning that some of the representations in the lead-up to the Termination Agreement were fraudulent, the plaintiff sued for breach of a prior agreement, fraudulent inducement of the Termination Agreement, breach of fiduciary duty and unjust enrichment. *Id.* at 396. The court granted defendant's motion to dismiss, holding that the general release in the Termination Agreement barred the claims. *Id.* The Court affirmed that "'Delaware courts recognize the validity of general releases.' … Such a release 'is intended to cover everything — what the parties presently have in mind, as well as what they do not have in mind.' … On its face, the broad and unambiguous language of the General Release encompasses all of the claims asserted in the Complaint." *Id.* at 397 (internal citations omitted). *See also Prairie Capital III, L.P. V. Double E Holding Corp.*, 132 A.3d 35, 50-52 (Del. Ch. 2015) ("A party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside the agreement, and then shirk its own bargain in favor of a 'but we did rely on the other representations' fraudulent inducement claim." (quoting *Abry Partners V.I.P. V. F&W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006)).

Here, the waiver and release provisions in the SPAs — sections 4(h), 9 and 12 — make clear that Plaintiffs released any and all prior claims, "whether known or unknown, contingent or non-contingent" that they had or may have had against Defendants, and that they were not relying on any purported promises or representations outside of those reflected in the 2020 SPAs. Accordingly, as in *Seven Investments, LLC* and *Prairie Capital*, all of Plaintiffs' common law claims — breach of the 2018 Stockholders' Agreement, fraudulent inducement, breach of fiduciary duty and unjust enrichment — must be dismissed.[8]

### B.   The Fraudulent Inducement Claim (Count V) Lacks the Required Elements and Fails to Allege a Duty to Speak Regarding Motorsport.

In addition to the full release of this claim in the 2020 SPAs, the common law fraudulent inducement claim also should be dismissed for lacking the same necessary elements that the Federal Securities Claims lack: no actionable material misstatement or omission (*see*, *supra* at I.C); no scienter (*supra* at I.D); no cognizable damages (*supra* at I.B); lack of causation and failure to meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure; and failing to allege a duty to speak as to information regarding Motorsport (*supra* at I.C).

### C.   There Is No Breach of Fiduciary Duty (Count VI).

Beyond the release of any fiduciary duty claims in the 2020 SPAs, including any claims relating to Defendants' sufficiency of disclosure of financial information, Am. Compl. ¶ 309(a), Plaintiffs fail to allege a fiduciary duty that Defendants breached. First, identifying a cash shortfall or the possibility of a capital call from 704Games's shareholders, *id.* ¶ 309(b), is not a breach of

---

[8]     As highly sophisticated investors, Plaintiffs have no serious arguments for why they should not be bound by the promises they made in the 2020 SPAs. For example, in the Amended Complaint, they simply added three *ipse dixits* that "it is fair to infer that Defendants intentionally or recklessly deceived Plaintiffs to agree" to the representations, releases and integration clauses in the 2020 SPAs. Am. Compl. ¶¶ 297-99. Those are insufficient to avoid dismissal.

fiduciary duty, as there is no plausible allegation that those statements were knowingly or even negligently false when made, *see* supra, at I.C.[9] Plaintiffs also fail to show that Defendants owed a fiduciary to disclose to them information regarding Motorsport — as opposed to 704 Games. *See infra* III.C.

There also is no plausible allegation of misappropriation of corporate opportunity. Am. Compl. ¶¶ 130-46, 309(d). Under Delaware law, a breach of fiduciary duty for usurpation of a corporate opportunity occurs where "(1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimical to his duties to the corporation." *Broz v. Cellular Inf. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996) (citing *Guth v. Loft*, 5. A.2d 503, 509 (Del. 1939)). As 704Games shareholders, Plaintiffs had no interest or expectancy in either the Alonso or the Le Mans opportunities, neither of which involved NASCAR, because Motorsport's independent right to pursue them was expressly confirmed in section 4.1(b)(iii) of the Stockholders' Agreement; 704Games thus had no reasonable "expectancy" as to those transactions. *See Broz*, 673 A.2d at 156 (no usurpation where defendant's status as competitor for opportunity was known to corporation); *In re Digex Sh. Lit.*, 789 A.2d 1176, 1190-91 (Del. Ch. 2000) (no "expectancy" where majority stockholder could lawfully vote to block underlying transaction that purportedly would have benefitted corporation). The Alonso and Le Mans opportunities also were not within 704Games's line of business. As illustrated by section 4.1(b)(iii)

---

[9]     Plaintiffs' alleged misrepresentations are based on their fraud claim and, as such, their claim fails for the same reason set forth above. *See, e.g.*, *Quinn v. Worldwide Communs., Inc.*, No. 10-CV-01512, 2011 U.S. Dist. LEXIS 16080, at *19 (E.D. Pa. Feb. 16, 2011) (dismissing breach of fiduciary claims where they were based on same alleged misrepresentations as dismissed fraud claims).

of the Stockholders' Agreement, plaintiffs knew that Motorsport was interested in pursuing other lines of business relating to Motorsport separate and apart from NASCAR. As "Formula One" racing offerings, the Alonso and Le Mans opportunities have nothing to do with NASCAR.[10]

In the Amended Complaint, Plaintiffs acknowledge that section 4.1 of the Stockholders' Agreement is "subject to certain definitions and limitations (Am. Compl. ¶ 138). These "definitions and limitations" include the Plaintiffs' unambiguous stipulation that "each Stockholder agrees that … nothing herein shall in any manner … restrict Motorsport or any of its Affiliates with respect to its development and licenses of the gaming products." Am. Compl. Ex. 1, § 4.1(b). This includes Motorsport's pursuit of agreements to develop gaming products beyond NASCAR.[11] Accordingly, the Amended Complaint does nothing to salvage Plaintiffs' corporate opportunity claim.

Lastly, Defendants had no duty to disclose material non-public information relating to Motorsport, as Plaintiffs were not shareholders of Motorsport. Am. Compl. ¶ 2309(e). *See Leung v. Schuler*, No. 17089, 2000 WL 264328 (Del. Ch. Feb. 29, 2000) (finding no fiduciary duty of disclosure where plaintiff was not a stockholder at time undisclosed transaction was authorized).

### D.  The Unjust Enrichment Claim (Count VI) Is Negated by the 2020 SPAs.

The unjust enrichment claim fails because it, too, is superseded by the 2020 SPAs. *See Air Products*, 237 F. Supp. 3d at 216 ("Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract.").

---

[10]      Plaintiffs' usurpation claim also should be dismissed because it is a derivative, not a direct claim. *See In re Digex Sh. Lit.*, 789 A.2d at 1190-91 ("The claim that the defendants usurped a corporate opportunity must necessarily constitute an 'injury' to the corporation and thus be a derivative claim.").

[11]      Tacitly conceding that any claims under the 2018 Stockholders' Agreement were released in the 2020 SPAs, Plaintiffs do not allege that Motorsport's pursuit of the Formula One licensing relationships breached section 4 of the Stockholders' Agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court dismiss the claims in the Amended Complaint with prejudice.[12]

Respectfully submitted,

Dated: May 17, 2021

OF COUNSEL

Brian L. Schwalb
George Kostolampros
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, D.C. 20001

     -and-

Edmund M. O'Toole
Dakota L. Kann
**VENABLE LLP**
1290 Avenue of the Americas
New York, NY 10104

**VENABLE LLP**

 */s/   Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 298-3523
Fax: (302) 298-3550
daobrien@venable.com

*Counsel for Defendants*

---

[12]    Because Plaintiffs were not shareholders in Motorsport and were owed no duty to be provided information regarding Motorsport, any further amendment to the Amended Complaint would be futile. *See In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 431-32 (D.N.J. 2005) (noting that the PSLRA "has narrowed the application of the amendment standard in securities fraud cases in order to filter out, at the earliest stage, lawsuits that have no factual basis").

## <u>CERTIFICATE OF SERVICE</u>

    I, Daniel A. O'Brien, hereby certify that on this 17th day of May, 2021, a copy of the foregoing document was electronically filed with the court and served via CM/ECF, on parties with counsel of record identified on the Court's docket.


                                   */s/ Daniel A. O'Brien*
                                   Daniel A. O'Brien (No. 4897)