## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOVATE 2, CORP.; CONTINENTAL GENERAL INSURANCE COMPANY; and LEO CAPITAL HOLDINGS LLC,<br><br>    Plaintiffs,<br><br>        v.<br><br>MOTORSPORT GAMES INC. (f/k/a MOTORSPORT GAMING US LLC); MIKE ZOI; JONATHAN NEW; DMITRY KOZKO; and ALEX ROTHBERT,<br><br>    Defendants. | Civil Action No. 21-00165-RGA |

## ANSWER TO COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Plaintiffs/Counter-defendants INNOVATE 2 Corp. ("Innovate"), Continental General Insurance Company ("Continental"), and Leo Capital Holdings LLC ("Leo" and, collectively with Innovate and Continental, "Plaintiffs"), by their undersigned attorneys, submit this Answer to the allegations in Defendants'[1] Counterclaims. (D.I. 37.)

## PRELIMINARY STATEMENT

The following are incorporated by reference into Defendants' responses to each paragraph of the Complaint:

The headings and sub-headings in Defendants' Counterclaims require no response. However, to the extent a response is required, Plaintiffs deny all allegations in the headings and sub-headings in Defendants' Counterclaims. Any allegation not expressly admitted below is denied.

---

[1] As used in this Answer to Counterclaims, Defendants are Motorsport Games Inc. ("Motorsport"), Mike Zoi ("Zoi"), Jonathan New ("New"), Dmitry Kozko ("Kozko"), and Alex Rothbert.

## STATEMENT OF FACTS

### The Parties, Jurisdiction, and Venue

1.      Counter-plaintiff Motorsport is a Delaware corporation with its principal place of business at 5972 NE 4th Avenue, Miami, Florida 3337.

ANSWER: Upon information and belief, Plaintiff admits the allegations in Paragraph 1.

2.      Upon information and belief, Counter-defendant Innovate 2 is Delaware corporation with its principal place of business at 450 Park Avenue, 29th Floor, New York, NY 10022.

ANSWER: Plaintiffs admit that Innovate 2 is a Delaware Corporation. Its principal place of business is 295 Madison Avenue, 12th Floor, New York, NY 10017.

3.      Upon information and belief, Counter-defendant Continental is a Texas insurance company with its principal place of business at 11001 Lakeline Boulevard, Suite 120, Austin, Texas 78717.

ANSWER: Plaintiffs admit the allegations in Paragraph 3.

4.      Upon information and belief, Counter-defendant Leo is an Illinois limited liability company with its principal place of business at 400 Skokie Boulevard, Suite 410, Northbrook, Illinois 60062.

ANSWER: Plaintiffs admit the allegations in Paragraph 4.

5.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship of the parties.

ANSWER: Paragraph 5 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 5.

6.      Alternatively, this Court has supplemental jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1367(a).

ANSWER: Paragraph 6 states conclusions of law for which no response is required.

7.      Venue is proper in this Court with respect to all Counter-defendants pursuant to 28 U.S.C. § 1391(b)(3) and pursuant to the exclusive forum selection clause agreed to by Counter-defendants in Section 17 of the Stock Purchase Agreements dated August 18, 2020 and October 6, 2020. Since this Court has personal jurisdiction over Defendants with respect to this action and proceeding in this Court is consistent with the Stock Purchase Agreements' exclusive forum selection clause, this Court is the most appropriate venue for this action.

ANSWER: Paragraph 7 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 7, except to the extent that Plaintiffs admit venue is proper and that this venue is the most appropriate forum for this action.

## Factual Allegations

8.      Motorsport entered into a Stock Purchase Agreement dated August 18, 2020 with Counter-defendants Innovate 2 and Counter-defendant Continental ("SPA"), pursuant to which Counter-defendants Innovate 2 and Continental sold their shares in 704Games to Motorsport. Pursuant to the SPA, Innovate 2 sold its 54,807 shares and Continental sold its 51,500 shares in 704Games to Motorsport for total price of $1,200,000.

ANSWER: Plaintiffs admit the allegations in Paragraph 8, except Plaintiffs dispute the validity of the SPA as a valid and enforceable agreement because it was fraudulently induced.

9.      Motorsport entered into a Stock Purchase Agreement dated October 6, 2020 with Counter-defendant Leo ("Leo SPA"), pursuant to which Counter-defendant Leo sold its 10,301 shares in 704Games to Motorsport for $116,279.

ANSWER: Plaintiffs admit the allegations in Paragraph 9, except Plaintiffs dispute the validity of the SPA as a valid and enforceable agreement because it was fraudulently induced.

10.     In the Amended Complaint, Counter-defendants now allege that based on purported representations made by Defendants, Counter-defendants sold their shares in 704Games to Motorsport for less than fair market value.

ANSWER: Plaintiffs admit that the allegations in Paragraph 10 purport to summarize the Amended Complaint in this action; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the Amended Complaint and refer the Court to that document for its full and complete contents.

11.     Counter-defendants Innovate 2 and Continental represented and warranted in Section 4(h) of the SPA the following:

> Seller acknowledges that the Seller is under no compulsion to sell the Shares to Buyer and is (h)completing the sale of the Shares on the Seller's own free will. The Seller (i) has sufficient knowledge and experience with and information about Buyer (including Buyer's business objective and current efforts to consummate a liquidity event or an initial public offering of Buyer as soon as practicable) and the Company in order to be fully familiar with Buyer, the Company and its current business, operations, assets, finances, financial results, financial condition and prospects and so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement, (ii) has full access to all books and records of the Company and all of its contracts, agreements and documents and (iii) has had an opportunity to ask questions of, and receive answers from, representatives of Buyer and the Company regarding Buyer, the Company and its current business, operations, assets, financing, operating results, financial condition and prospects in order to make an informed decision to sell the Shares.

4

ANSWER: Plaintiffs admit that the allegations in Paragraph 11 purport to quote, in part, and/or paraphrase Section 4(h) of the SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the SPA and refer the Court to such agreement for its full and complete terms.

12.     Counter-defendant Leo similarly represented and warranted in Section 4(h) of the Leo SPA the following:

> Seller acknowledges that the Seller is under no compulsion to sell the Shares to Buyer and is (h) completing the sale of the Shares on the Seller's own free will. The Seller (i) has sufficient knowledge and experience with and information about Buyer (including Buyer's business objective and current efforts to consummate a liquidity event or an initial public offering of Buyer as soon as practicable) and the Company in order to be fully familiar with Buyer, the Company and its current business, operations, assets, finances, financial results, financial condition and prospects and so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement, (ii) has full access to all books and records of the Company and all of its contracts, agreements and documents and (iii) has had an opportunity to ask questions of, and receive answers from, representatives of Buyer and the Company regarding Buyer, the Company and its current business, operations, assets, financing, operating results, financial condition and prospects in order to make an informed decision to sell the Shares.

ANSWER: Plaintiffs admit that the allegations in Paragraph 12 purport to quote, in part, and/or paraphrase Section 4(h) of the Leo SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the Leo SPA and refer the Court to such agreement for its full and complete terms.

13.     In their Amended Complaint, Counter-defendants now allege facts that, based on purported representations made by Defendants, (1) they mistakenly believed the contemplated "liquidity event or an initial public offering of Buyer" would be an offering of Motorsport's parent company and/or would include substantial assets other than those of the 704Games and (2) they

mistakenly believed that they had access to the same information known to Defendants, and therefore access to all the information necessary to make a decision to sell Innovate 2's and Continental's respective shares in the Company. Each of these foregoing allegations by Counter-defendants constitute allegations that the representations and warranties they each made in Section 4(h) of the SPA and the Leo SPA were false at the time Counter-defendants made these representations and warranties.

ANSWER: Plaintiffs admit that the allegations in the first sentence of Paragraph 13 purport to summarize the Amended Complaint in this action; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the Amended Complaint and refer the Court to that document for its full and complete contents. Plaintiffs deny the allegations in the second sentence of Paragraph 13.

14.     Counter-defendants Innovate 2 and Continental also represented in Section 9 of the SPA the following:

> Release. Seller, for itself and on behalf of Seller's affiliates, successors and assigns, shareholders, officers, directors, employees, contractors, affiliates, agents and their successors and assigns (collectively, the "Seller Releasors") hereby releases and forever discharges the Company, Buyer, Buyer's members, shareholders, managers, officers, directors, contractors, affiliates, heirs, successors, predecessors, assigns, agents, the Company's post-Closing shareholders, and all persons acting by, through or under each of them (collectively, the "Buyer Releasees"), of and from any and all claims, debts, obligations and liabilities, whether known or unknown, contingent or non-contingent, at law or in equity, in each case directly or indirectly arising from or in connection with, or relating to, the Company, the Company's business, the Shares or any agreements or obligations of the Company and/or Seller's ownership of the Company or resulting from Seller or any of its Related Parties having been a director, officer or employee of the Company, which the Seller Releasors or any of them now have or had or may hereafter have against either the Company or the Buyer Releasees, or any them; provided, however, that nothing in this Section 9 shall terminate or release Buyer's obligations to Seller

under this Agreement (or under any other agreement or instrument to be executed in conjunction with this Agreement in order to consummate the transactions contemplated herein).

ANSWER: Plaintiffs admit that the allegations in Paragraph 14 purport to quote, in part, and/or paraphrase Section 9 of the SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the SPA and refer the Court to such agreement for its full and complete terms.

15.     Counter-defendant Leo similarly represented in Section 9 of the Leo SPA the following:

> Release. Seller, for itself and on behalf of Seller's affiliates, successors and assigns, shareholders, officers, directors, employees, contractors, affiliates, agents and their successors and assigns (collectively, the "Seller Releasors") hereby releases and forever discharges the Company, Buyer, Buyer's members, shareholders, managers, officers, directors, contractors, affiliates, heirs, successors, predecessors, assigns, agents, the Company's post-Closing shareholders, and all persons acting by, through or under each of them (collectively, the "Buyer Releasees"), of and from any and all claims, debts, obligations and liabilities, whether known or unknown, contingent or non-contingent, at law or in equity, in each case directly or indirectly arising from or in connection with, or relating to, the Company, the Company's business, the Shares or any agreements or obligations of the Company and/or Seller's ownership of the Company or resulting from Seller or any of its Related Parties having been a director, officer or employee of the Company, which the Seller Releasors or any of them now have or had or may hereafter have against either the Company or the Buyer Releasees, or any them; provided, however, that nothing in this Section 9 shall terminate or release Buyer's obligations to Seller under this Agreement (or under any other agreement or instrument to be executed in conjunction with this Agreement in order to consummate the transactions contemplated herein).

ANSWER: Plaintiffs admit that the allegations in Paragraph 15 purport to quote, in part, and/or paraphrase Section 9 of the Leo SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the Leo SPA and refer the Court to such agreement for its full and complete terms.

16.     In their Amended Complaint, Counter-defendants Innovate 2 and Continental have alleged various claims that they agreed to release and forever discharge pursuant to Section 9 of the SPA. Similarly, Counter-defendant Leo has alleged various claims in the Amended Complaint that it agreed to release and forever discharge pursuant to Section 9 of the Leo SPA.

ANSWER: Paragraph 16 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 16.

17.     In Section 7 of the SPA, Counter-defendants Innovate 2 and Continental agreed to "indemnify and hold harmless" Counter-plaintiff "from and against any and all losses, costs, damages, liabilities or expenses actually incurred, including without limitation, reasonable and documented attorneys' fees or other legal expenses or expert fees …arising out of: (a) any breach in any representation or warranty made by [Seller] in this Agreement[.]"

ANSWER: Plaintiffs admit that the allegations in Paragraph 17 purport to quote, in part, and/or paraphrase Section 7 of the SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the SPA and refer the Court to such agreement for its full and complete terms.

18.     In Section 7 of the Leo SPA, Counter-defendant Leo similarly agreed to "indemnify and hold harmless" Counter-plaintiff "from and against any and all losses, costs, damages, liabilities or expenses actually incurred, including without limitation, reasonable and documented attorneys' fees or other legal expenses or expert fees …arising out of: (a) any breach in any representation or warranty made by [Seller] in this Agreement[.]"

ANSWER: Plaintiffs admit that the allegations in Paragraph 18 purport to quote, in part, and/or paraphrase Section 7 of the Leo SPA; Plaintiffs deny those allegations to the extent they

inaccurately or incompletely quote or describe the relevant terms of the Leo SPA and refer the Court to such agreement for its full and complete terms.

## COUNT I

### BREACH OF CONTRACT

### (AGAINST INNOVATE 2 AND CONTINENTAL)

19.     Counter-plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

ANSWER: Plaintiffs incorporate by reference the paragraphs set forth above as if each were separately restated herein.

20.     The SPA is a valid and enforceable contract to which Counter-plaintiff and Counter-defendants Innovate 2 and Continental are parties.

ANSWER: Plaintiffs deny the allegations in Paragraph 20.

21.     Pursuant to the SPA, Counter-plaintiff performed its obligations when it paid Counter-defendant Innovate 2 the sum of $618,664.81 in exchange for 54,807 shares of 704Games stock and Counter-defendant Continental the sum of $58,335.19 in exchange for 51,500 shares of 704Games stock.

ANSWER: Plaintiffs deny the allegations in Paragraph 21.

22.     In Section 4(h) of the SPA, Counter-defendants Innovate 2 and Continental represented and warranted that they had "sufficient knowledge and experience with and information about Buyer (including Buyer's business objective to consummate a liquidity event or initial public officer of the Buyer as soon as possible) and the Company … so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement … full access to all books and records of the Company and all of its contracts, agreements and

documents and … an opportunity to ask questions of, and receive answers from, representatives of Buyer and the Company regarding Buyer, the Company and its current business, operations, assets, financing, operating results, financial condition and prospects in order to make an informed decision to sell the Shares."

ANSWER: Plaintiffs admit that the allegations in Paragraph 22 purport to quote, in part, and/or paraphrase Section 4(h) of the SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the SPA and refer the Court to such agreement for its full and complete terms.

23.     Despite these representations, Counter-defendants Innovate 2 and Continental now allege in the Amended Complaint that (1) they mistakenly believed the contemplated "liquidity event or an initial public offering of Buyer" would be an offering of Motorsport's parent company and/or would include substantial assets other than those of the 704Games and (2) they mistakenly believed that they had access to the same information known to Defendants, and therefore access to all the information necessary to make a decision to sell Innovate 2's and Continental's respective shares in the Company.

ANSWER: Plaintiffs admit that the allegations in Paragraph 23 purport to summarize the Amended Complaint in this action; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the Amended Complaint and refer the Court to that document for its full and complete contents

24.     Counter-defendants' allegations are in stark contrast with and amount to breach of the representations and warranties made in Section 4(h) of the SPA.

ANSWER: Paragraph 24 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 24.

25.     In Section 9 of the SPA, Counter-defendants Innovate 2 and Continental agreed to "release[] and forever discharge[] … Buyer, Buyer's members, shareholders, managers, officers, directors, contractors, affiliates, heirs, successors, predecessors, assigns, agents, the Company's post-Closing shareholders, and all persons acting by, through or under each of them … of and from any and all claims, debts, obligations and liabilities, whether known or unknown, contingent or non-contingent, at law or in equity … arising from or in connection with, or relating to, the Company, the Company's business, the Shares … which the Seller Releasors or any of them now have or had or may hereafter have against … the Buyer Releasees".

ANSWER: Plaintiffs admit that the allegations in Paragraph 25 purport to quote, in part, and/or paraphrase Section 9 of the SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the SPA and refer the Court to such agreement for its full and complete terms.

26.     In direct violation of this broad release provision, Counter-defendants Innovate 2 and Continental initiated this action asserting claims that they agreed to release and forever discharge.

ANSWER: Plaintiffs admit that they initiated this action. The other allegations of Paragraph 26 state conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 26.

27.     Thus, by bringing this action Counter-defendants Innovate 2 and Continental have breached Section 9 of the SPA.

ANSWER: Paragraph 27 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 27.

11

28.     Counter-defendants Innovate 2's and Continental's breach of Sections 4(h) and 9 of the SPA has directly and proximately caused Counter-plaintiff to incur, and continue to incur damages in the form of attorneys' fees, costs, and expenses associated with this litigation.

ANSWER: Plaintiffs deny the allegations in Paragraph 28.

## COUNT II

### BREACH OF CONTRACT

### (AGAINST LEO)

29.     Counter-plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

ANSWER: Plaintiffs incorporate by reference the paragraphs set forth above as if each were separately restated herein.

30.     The Leo SPA is a valid and enforceable contract to which Counter-plaintiff and Counter-defendant Leo are parties.

ANSWER: Plaintiffs deny the allegations in Paragraph 30.

31.     Pursuant to the Leo SPA, Counter-plaintiff performed its obligations when it paid Counter-defendant Leo the sum of $116,279 in exchange for 10,301 shares of 704Games stock.

ANSWER: Plaintiffs deny the allegations in Paragraph 31.

32.     In Section 4(h) of the Leo SPA, Counter-defendant Leo represented and warranted that it had "sufficient knowledge and experience with and information about Buyer (including Buyer's business objective to consummate a liquidity event or initial public officer of the Buyer as soon as possible) and the Company … so as to be able to evaluate the risks and merits of consummating the transactions contemplated by this Agreement … full access to all books and records of the Company and all of its contracts, agreements and documents and … an opportunity

to ask questions of, and receive answers from, representatives of Buyer and the Company regarding Buyer, the Company and its current business, operations, assets, financing, operating results, financial condition and prospects in order to make an informed decision to sell the Shares."

ANSWER: Plaintiffs admit that the allegations in Paragraph 32 purport to quote, in part, and/or paraphrase Section 4(h) of the Leo SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the Leo SPA and refer the Court to such agreement for its full and complete terms.

33.     Despite these representations, Counter-defendant Leo now alleges in the Amended Complaint that (1) it mistakenly believed the contemplated "liquidity event or an initial public offering of Buyer" would be an offering of Motorsport's parent company and/or would include substantial assets other than those of the 704Games and (2) it mistakenly believed that it had access to the same information known to Defendants, and therefore access to all the information necessary to make a decision to sell its shares in the Company.

ANSWER: Plaintiffs admit that the allegations in Paragraph 33 purport to summarize the Amended Complaint in this action; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the Amended Complaint and refer the Court to that document for its full and complete contents

34.     Counter-defendants' allegations are in stark contrast with and amount to breach of the representations and warranties made in Section 4(h) of the Leo SPA.

ANSWER: Paragraph 34 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 34.

35.     In Section 9 of the Leo SPA, Counter-defendant Leo agreed to "release[] and forever discharge[] … Buyer, Buyer's members, shareholders, managers, officers, directors,

contractors, affiliates, heirs, successors, predecessors, assigns, agents, the Company's post-Closing shareholders, and all persons acting by, through or under each of them … of and from any and all claims, debts, obligations and liabilities, whether known or unknown, contingent or non-contingent, at law or in equity … arising from or in connection with, or relating to, the Company, the Company's business, the Shares … which the Seller Releasors or any of them now have or had or may hereafter have against … the Buyer Releasees".

ANSWER: Plaintiffs admit that the allegations in Paragraph 35 purport to quote, in part, and/or paraphrase Section 9 of the Leo SPA; Plaintiffs deny those allegations to the extent they inaccurately or incompletely quote or describe the relevant terms of the Leo SPA and refer the Court to such agreement for its full and complete terms.

36.      In direct violation of this broad release provision, Counter-defendant Leo initiated this action asserting claims that it agreed to release and forever discharge.

ANSWER: Plaintiffs admit that they initiated this action. The other allegations of Paragraph 26 state conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 36.

37.      Thus, by bringing this action Counter-defendant Leo has breached Section 9 of the Leo SPA.

ANSWER: Paragraph 27 states conclusions of law for which no response is required. To the extent a response is required, Plaintiffs deny the allegations in Paragraph 37.

38.      Counter-defendant Leo's breach of Sections 4(h) and 9 of the Leo SPA has directly and proximately caused Counter-plaintiff to incur, and continue to incur, damages in the form of attorneys' fees, costs, and expenses associated with this litigation.

ANSWER: Plaintiffs deny the allegations in Paragraph 38.

## PRAYER FOR RELIEF

Plaintiffs deny that Defendants are entitled to any relief.

## AFFIRMATIVE DEFENSES

Pending further investigation and discovery, Plaintiffs assert the following affirmative defenses to the Counterclaims. Plaintiffs' investigation continues, and Plaintiffs reserve the right to amend or supplement this Answer to assert other and additional defenses, claims, and third party claims as additional information is obtained. Plaintiffs do not assume any burden of proof, persuasion, or production with respect to any issue where applicable law places the burden upon the Defendants.

## FIRST DEFENSE

Motorsport's Counterclaims and each purported cause of action fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

Plaintiffs have performed all duties under the SPA and the Leo SPA other than any duties which were prevented or excused, and therefore never breached the SPA or the Leo SPA.

## THIRD DEFENSE

Motorsport's counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH DEFENSE

Motorsport's counterclaims are invalid because Plaintiffs' representations and the releases in the SPA and the Leo SPA were induced by Defendants' fraud.

## FIFTH DEFENSE

To the extent Plaintiffs allegedly breached the representations and warranties of the SPA or the Leo SPA, Defendants prevented Plaintiffs from performing under the contracts, in that the Defendants caused Plaintiffs to believe that the representations were true at the time they were made.

## SIXTH DEFENSE

Motorsport's counterclaims are invalid and/or do not state a claim because Motorsport has waived Plaintiffs' performance under the SPA and the Leo SPA.

## SEVENTH DEFENSE

Motorsport's counterclaims are not ripe and/or do not state a claim because Defendants have not given notice of breach as required by the SPA and the Leo SPA.

## EIGHTH DEFENSE

Plaintiff's alleged breaches are excused because of Motorsport's prior, material breach.

## NINTH DEFENSE

Plaintiffs' alleged breaches are excused because Motorsport violated the implied covenant of good faith and fair dealing.

WHEREFORE, having fully answered the Counterclaims, Plaintiffs request that the Court enter judgment in its favor on all counts, that Plaintiffs be awarded their attorneys' fees, costs, expenses and for such other relief as the Court deems appropriate.

Dated:  May 16, 2022

**CHIPMAN BROWN CICERO & COLE, LLP**

OF COUNSEL:

Karl C. Huth
Matthew J. Reynolds
Sara G. Wilcox
HUTH REYNOLDS LLP
41 Cannon Court
Huntington, NY 11743
(212) 731-9333
huth@huthreynolds.com
reynolds@huthreynolds.com
swilcox@huthreynolds.com

 /s/ Joseph B. Cicero
Joseph B. Cicero (#4388)
Gregory E. Stuhlman (#4765)
Aidan T. Hamilton (#6729)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE 19801
(302) 295-0191
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com
hamilton@chipmanbrown.com

*Attorneys for Plaintiffs INNOVATE 2, Corp. and
Leo Capital Holdings LLC.*

**LABATON SUCHAROW LLP**

OF COUNSEL:

David J. Schwartz
Ira A. Schochet
Carol C. Villegas
Jake Bissell-Linsk
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10591
(212) 907-0700
(212) 818-0477 (fax)
dschwartz@labaton.com
ischochet@labaton.com
cvillegas@labaton.com
jbisselllinsk@labaton.com

 /s/ Ned Weinberger
Ned Weinberger (#5256)
300 Delaware Avenue, Suite 1340
Wilmington, DE 19801
(302) 573-2540
nweinberger@labaton.com

*Attorneys for Plaintiff Continental General
Insurance Company*