IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INNOVATE 2 CORP. (f/k/a HC2 HOLD-
INGS 2, INC.)

   *Plaintiff*,

  v.

MOTORSPORT GAMES INC., MIKE
ZOI, JONATHAN NEW, DMITRY
KOZKO, and ALEX ROTHBERT

   *Defendants*.

No. 1:21-cv-165-SB

---

Joseph B. Cicero, Thomas A. Youngman, Gregory E. Stuhlman, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Karl C. Huth, Matthew J. Reynolds, Sara G, HUTH REYNOLDS LLP, New York, New York

                    *Counsel for Plaintiff.*

Daniel A. O'Brien, VENABLE LLP, Wilmington, Delaware; George Kostolampros, Benjamin Horowitz, Castell Abner, III, VENABLE LLP, Washington, DC; Carly M. Celestino, VENABLE LLP, Tysons, Virginia

                    *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

February 26, 2025

---

BIBAS, *Circuit Judge*, sitting by designation.

This is a securities-fraud case, but there was no fraud. One company sold its shares in another for what, in hindsight, appears to be less than it could have gotten if it had held onto them. But not every poor investment decision is due to securities fraud. So I grant summary judgment to defendants, deny it for plaintiffs, and deny defendants' motion to exclude the expert report without prejudice because it does not bear on this decision.

## I. MOTORSPORT ALLEGEDLY OMITTED KEY INFORMATION BEFORE BUYING SHARES

### A. 704Games struggles to profit

Innovate is a publicly traded company that owns other companies. (I use Innovate to refer to all the Innovate companies.) D.I. 134-2 at 3–4 (tr. 12:21–13:6); 134-7 at 2; D.I. 134-2 at 3 (tr. 9:15–18). One company that it owned was 704Games. D.I. 130 at 1–2, 2 n.1; D.I. 134-2 at 4 (tr. 13:7–9). 704Games owned an exclusive license to make NASCAR video games for PlayStation, Xbox, and PC. D.I. 130 at 2 n.1. Its main game franchise was NASCAR Heat, which lets players race cars around a track. D.I. 130 at 3.

But 704Games struggled to turn a profit. One of its financial officers testified that "basically every year the company ran out of money." D.I. 134-8 at 5–6 (tr. 17:3–8, 20:12–13). Though the CEO was optimistic that the company would soon see an upturn, Innovate was "not interested in putting any more" money in. *Id.* at 6 (tr. 20:18); D.I.134-18 at 21600. So 704Games looked for outside investors. D.I. 134-8 at 6 (tr. 20:19–25); D.I. 134-18 at 21598.

Enter Motorsport Games. D.I. 134-10 at 9; 134-14 at ¶ 3. In August 2018, Motorsport agreed to buy 53.5% of 704Games, leaving Innovate with 13.5%. D.I. 134-19 at 27187.

From 2018 to 2020, 704Games's revenue fared little better, and Innovate's financial advisory firm kept estimating that Innovate's share in the company was worth less and less. D.I. 134-6 at 3–4 (tr. 10:3–17, 15:11–25); D.I. 119 exhibits 30–37. During this time, the Heat franchise "accounted for approximately 99% of [Motorsport's] total net revenue." D.I. 14-1 at 75.

In March 2019, the minority investors, including Innovate, "decided to explore an exit" by selling their shares. D.I. 134-40 at 256. But the minority investors wanted more than Motorsport would pay, so the negotiations stalled. *Id.* at 252.

## B. At a board meeting, Motorsport paints a gloomy picture

Innovate's claims turn on what happened at a June 5, 2020, board meeting. The crux of Innovate's claim is that 704Games painted a misleadingly gloomy picture about its new game, Heat 5, as part of a scheme to buy out the minority shareholders at a bargain price before Motorsport went public.

At the meeting, 704Games said that its newest Heat game was projected to do poorly and that the company was in financial trouble. For instance, it presented a slide warning that "Heat 5 … pre-sales are struggling, bad community sentiment." D.I. 134-25 at 329. According to 704Games's intel, the gaming community was worried that Heat 5 was going to be just like Heat 4, a mere "copy/paste." D.I. 134-11 at 28 (tr. 108:3–6). Plus, Heat 5 sales were 27% behind where Heat 4 sales had been at the same time. D.I. 134-25 at 332. Also, COVID lockdowns were hurting presales;

3

fewer "channels" were interested in selling the game. D.I. 134-8 at 41 (tr. 160:20–25). Finally, the company warned that it would "run out of money next year … even if we hit our current projections." D.I. 134-25 at 329.

A week after that meeting, Motorsport's CFO told the minority shareholders that it had overpaid for its shares in 704Games by $1.1 million. D.I. 127-6 at 9852. So it said it would either take that money from 704Games or the minority shareholders would have to hand over 15% of their equity to Motorsport. *Id.* at 9852–53. Motorsport never followed through on that demand. D.I. 134-54 at 526.

Then Motorsport offered to buy out some of the minority shareholders, including Innovate. D.I. 127-21 at 9866. In mid-August, the two sides agreed that Motorsport would pay nearly $620,000 for Innovate's shares. D.I. 134-64 at 1712.

But Innovate says that between the June 5 board meeting and the August sale of shares, Motorsport knew and omitted positive sales data about Heat 5. In early July, Motorsport's Director of Sales told a NASCAR representative that it had "very positive" Heat 5 sales, including "very healthy digital numbers." D.I. 137-13 at 8166. Later in July, Motorsport highlighted that "Heat 5 reports [a] strong first week." D.I. 137-11 at 20725. Motorsport's CFO did not share this information with Innovate, who was just "a minority shareholder of 704Games." D.I. 127-29 at 75, 79 (tr. 22:9–19, 54:6–12). Plus, Innovate says Motorsport lied about running out of money; it says Motorsport had plenty because it had just received a $10 million line of credit. D.I. 137-15 at 4329–31.

Based on these omissions, Innovate sued Motorsport and several of its executives for securities fraud, breach of contract, and a few other fraud-based common law actions. Each side has now moved for summary judgment. D.I. 115, 124.

## II. I GRANT MOTORSPORT SUMMARY JUDGMENT

I must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I view facts in the light most favorable to the nonmovants. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). I must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Innovate brings eight claims, but they all revolve around the same fraud claim under Section 10(b) of the Securities Exchange Act and Rule 10b-5(b). For its Section 10(b) and 10b-5 claim, Innovate must show "six elements: (i) a misrepresentation or omission of material fact; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023) (emphasis omitted). But Innovate cannot meet the first element: it cannot show a false or misleading representation or omission of material fact. So the 10(b) and 10b-5 claims, along with all the others, fail.

### A. There was no false or misleading representation or omission

*1. No misrepresentation.* There was no "misrepresented fact" here. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976). Innovate's claims center around Motorsport's gloomy forward-looking predictions about future performance. But it must

5

be able to prove that such predictions were false or misleading when made. 15 U.S.C. § 78u-5(c)(1), (i)(1); *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016).

Innovate has no evidence that anything Motorsport or 704Games said was false or misleading when it was said. The summary-judgment briefing focuses on the June 5, 2020, board meeting. But Innovate has no evidence that any representations at that meeting were false when made. (Innovate also asserts without support that statements at the November 2019 board meeting were false. D.I. 153 at 3. The record does not confirm that conclusory claim, and Innovate does not meaningfully develop it. *See, e.g.*, D.I. 134-8 (tr. 99:9–25); D.I. 134-9 at 2.) Plus, the evidence shows that Motorsport believed, based on its review of the data, that its financial projections were "accurate at the time" they were made in June. D.I. 127-29 at 85 (tr. 114:3–11).

True, "a projection that is issued without a reasonable basis" is a misrepresentation. *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645–46 (3d Cir. 1989). But Innovate has no evidence that Motorsport made those projections unreasonably: there is nothing showing that Motorsport inadequately considered the available data or used unsound forecasting methods. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (Alito, J.).

Innovate points only to *omissions* about new facts that came into view *weeks and months* after the June 5 meeting. For instance, it cites emails from July that referred to *July* sales data. D.I. 137-13 at 8166, 127-14 at 7514; 137-11 at 20725. Some are even from *August* (and they refer to July or August sales data). D.I. 127-30 at 100

6

(tr. 170:19–171:16) (discussing an email sent in late August summarizing positive July and August sales data); 127-33 at 135 (tr. 159:2–8) (discussing a spreadsheet made in late August); *id.* at 136–38 (tr. 168:23–170:11) (stating Heat 5 sales were more successful than projected without suggesting that any June representations were false or misleading when made). Indeed, Innovate's own briefing shows that Motorsport did not misrepresent its prospects: The "gloomy picture [Motorsport] had painted at the June 5, 2020 Board meeting" was contradicted by later Heat 5 sales data showing it was "performing above expectations." D.I. 129 at 15. Similarly, Innovate points to 704Games's successful bid to secure an extended line of credit. But that extension came only in late July, well after this meeting. *Id.* at 13 (conceding this). So Innovate cannot show any misrepresentations. It must instead try omissions.

*2. No actionable omission.* Innovate can sue Motorsport for omitting information only if Motorsport had a duty to disclose it. Two duties might be relevant here: a duty to correct and a duty to update.

Start with the duty to correct. When a company makes a statement that it believes is true but later learns was not, then the company must correct the statement within a reasonable time. *In re Burlington Coat Factory*, 114 F.3d at 1431. For the reasons given above, Innovate has no evidence that the June 5 meeting statements were false or "what the specific error or set of errors might have been that went into the [June 5, 2020], forecast." *Id.* Because Motorsport did not make a false statement, it had no duty to correct one.

7

That leaves a duty to update. This duty "concerns statements that, although reasonable at the time made, become misleading when viewed in the context of subsequent events." *Id.* But it does not extend to a single, ordinary earnings forecast—like 704Games's projection of Heat sales. *Id.* at 1432. Companies do not bear "a continuous duty to update" ordinary earnings forecasts. *Id.* Motorsport had no duty to update under this standard. True, its original projections about Heat 5 sales were not borne out. But as a matter of law, accurate projections do not contain "an implicit representation that the trend is going to continue." *Id.* The projections were accurate when made. The later change in facts does not give Innovate a claim. The same goes for the company's projections about its financial health.

Yet Innovate argues an exception applies: if the disclosure announces "a fundamental change in the course the company is likely to take," the company may have to update "with news of any radical change in the company's plans—[for instance,] news that the merger is no longer likely to take place." *Id.* at 1433–34. This exception is "narrow" and covers only "*extreme* changes in the company's originally expressed expectation of an event such as a takeover, merger, or liquidation." *Id.* at 1434 n.20.

That narrow exception does not apply here. Though the Heat series accounted for 99% of 704Games's sales, there was no *fundamental change* transforming the company. It was not changing its corporate form (via takeover or merger), and it was not ceasing to exist (via liquidation). *See, e.g.*, *In re Oracle Corp. Derivative Litig.*, No. 139, 2024, 2025 WL 249066, at *11 (Del. Jan. 21, 2025) (describing mergers, consolidations, and dissolutions as "fundamental corporate changes" that trigger special

8

rules under state corporate law) (internal quotation marks omitted). Heat 5 sales were important to 704Games, but the forecasts were ordinary. Nor does it matter that 704Games was privately held. *See Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 431 (7th Cir. 1987) (describing a special rule for privately held companies disclosing *mergers*, not ordinary earnings projections).

Innovate skillfully argues to the contrary. But adopting its position would extend the law beyond *In re Burlington*. It would also create tension with *Burlington*'s worry that expansive disclosure duties would "drastic[ally] reduc[e] … the number of [forecast] projections made by companies." 114 F.3d at 1433.

*3. Other omissions.* Innovate also says Motorsport omitted telling it about new games that it was licensing. D.I. 152 at 13–14. But Motorsport repeatedly told Innovate about these games specifically and its efforts to license new games in general. D.I. 134-27 at 70617 (Le Mans game); D.I. 134-11 at 48–49 (tr. 188:19–190:20) (discussing a presentation shared with Innovate that "talked about all the different licenses that Motorsport Games [was] going after"); D.I. 134-1 at 48 (tr. 190:8–191:16) (Innovate not recalling "advanced discussions" about these licenses but not contradicting the other testimony); D.I. 134-11 at 10–12 (tr. 37–44) (discussing joint ventures and licensing agreements for a Le Mans game). Innovate has not shown that it did not know about these new licenses and that this omission was material. *See* D.I. 152 at 13–14 (Innovate relying on *allegations* that these licenses were material, but not showing any evidence to create a genuine dispute of fact). But even if it had, Motorsport was not under a duty to disclose. "[P]ossession of material nonpublic

9

information alone does not create a duty to disclose it." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1432. Nor would it support a theory of misrepresentation. Even if Motorsport had failed to share how these efforts were progressing, that would not have made any of its other statements materially misleading. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1417. And there is no evidence that these games affected Heat sales or the company's financial troubles.

Finally, I already put to rest one theory that Innovate now tries to revive: that Motorsport omitted information about its potential IPO. But I said this theory would not work in my opinion denying the motion to dismiss. D.I. 32 at 6. It works no better now. Innovate seems to update its theory slightly, now saying that Motorsport failed to disclose the *advanced* stages that its IPO plans had reached. D.I. 129 at 22. But this tweak does not help. Innovate still agreed that it "acknowledge[d]" when it sold its shares in Motorsport that it had "sufficient knowledge and experience with and information about [Motorsport] (including [Motorsport's] business objectives and current efforts to consummate a liquidity event or an initial public offering … *as soon as practicable*)." D.I. 150-2 at 3 (¶ 4(h)) (emphasis added). This sinks Innovate's theory.

Innovate cannot prove a material misrepresentation or omission. So I grant summary judgment to Motorsport on Count I. D.I. 14 at 48.

### B. All of Innovate's other federal securities claims fail

I also grant summary judgment to defendants on Counts II–IV. D.I. 14 at 50–58. In Count II, Innovate bases its Rule 10b-5(a) and (c) claim on the same alleged fraud discussed above. *See* D.I. 152 at 21–23 (basing these claims on the same omissions discussed above); D.I. 136 at 13–22. Repackaging the same fraud argument in

different sections of Rule 10b-5 does not revive that claim. There is no unlawful omission on which to base this liability. *See Lorenzo v. SEC*, 587 U.S. 71, 77–81 (2019) (holding that Rule 10b-5(a) and (c) claims can be grounded in false or misleading statements or omissions). Nor does Innovate identify some other fraudulent scheme or conduct that supports this claim. *See In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 597–98 (E.D. Pa. 2023). So Count II fails.

For Count III, Innovate has failed to show "a predicate [S]ection 10(b) violation," so its Section 20(a) claim fails. *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014). Its Section 20A claim in Count IV fails for the same reason. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999).

**C. All of Innovate's common-law claims fail**

Innovate also brings common-law claims for breach of contract (Count V), fraud in the inducement (Count VI), breach of fiduciary duties (Count VII), and unjust enrichment (Count VIII). D.I. 14 at 58–63. But all these claims are barred by the release in the Stock Purchase Agreement. D.I. 134-64 at 1707 (¶9) (stating that Innovate "releases and forever discharges … any and all claims" against Motorsport and its employees). When I denied Motorsport's motion to dismiss, I said that this "provision is broad enough to bar all the shareholders' common-law claims." D.I. 32 at 10. I let those claims proceed because Innovate pleaded that the release was fraudulently induced. But now it is clear that there was no fraud. So the release applies and bars these claims.

### III. I G<small>RANT</small> M<small>OTORSPORT</small> S<small>UMMARY</small> J<small>UDGMENT ON</small> I<small>TS</small> C<small>OUNTERCLAIM</small>

Motorsport counterclaims for breach of contract. D.I. 37 at 80–84. It says Innovate breached the Stock Purchase Agreement discussed above by bringing all these claims. *See* D.I. 134-64 at 1707 (¶ 9). It now asks for summary judgment against Innovate on this claim. D.I. 133 at 38. I grant it.

"Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012). They also enforce broad releases, like this one. *See, e.g., Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1256 (Del. 2004). Innovate agreed to release Motorsport and its employees from "any and all claims" arising from this sale of shares. D.I. 134-64 at 1707 (¶ 9). Innovate violated the plain text of this release by bringing these claims against Motorsport, so I grant summary judgment to Motorsport on its counterclaim. Innovate's only defense is that the contract was fraudulently induced, but I have rejected that point. D.I. 152 at 31.

(I do not hold that Innovate breached its representation in Section 4(h) of the Agreement. D.I. 134-64 at 1705. Innovate says that Motorsport did not give it certain financial documents; I hold only that there was no legal duty to do so. D.I. 152 at 31.)

Finally, the contract lets Motorsport recover legal expenses, including attorney's fees. Delaware law presumes that indemnity agreements do not "require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent." *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, C.A. No. 07C-08-286, 2012 WL 1415466, at *2 (Del. Super. Ct. Mar. 29, 2012). But the agreement here overrides that

presumption: "any breach or failure of [Innovate] to perform any covenant or obligation of [Innovate] set out in this agreement" means Innovate must pay for "all losses, costs, damages, liabilities or expenses … including … documented attorneys' fees and other legal expenses or expert fees" arising from breaching the contract. D.I. 134-64 at 1707.

### IV. NO ADDITIONAL DISCOVERY IS NEEDED

Innovate raises one last point: that it needs more discovery to prove its claims. D.I. 152 at 33–34. It says these materials are about 704Games's pre-IPO valuation. But that is irrelevant because, even assuming these numbers were not properly disclosed, this omission is not about a fundamental change in the company. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1433–34. Even if the request were about relevant information, I granted the parties a generous discovery timeline, and it does not serve the interests of resolving this case or justice to reopen discovery. Innovate's Rule 56(d) request is denied.

The parties also raise another discovery dispute, each accusing the other of interfering with a witness during his deposition. These are serious accusations, and the Court would not appreciate it if they were made lightly. But because I see no evidence that this dispute would change the outcome now, I need not reach it.

### V. I DENY THE MOTION IN LIMINE AS MOOT

Defendants ask me to exclude Innovate's expert report. D.I. 117. This report does not bear on my legal conclusion. Nothing in it creates a material dispute of fact: Innovate does not cite it in opposing Motorsport's bid for summary judgment nor in its own summary judgment briefing. D.I. 152, 136. Most of the report rehashes

13

Innovate's argument that the projections in June 2020 were proven wrong by later sales. D.I. 132-10 at 5–7. I rejected those points as a matter of law, so this report makes no difference. So I deny the motion to exclude the report, without prejudice, as moot.

\* \* \* \* \*

I grant summary judgment to Motorsport because (1) Innovate's claims fail as a matter of law and (2) Innovate breached its contract not to sue. I deny Innovate's bid for summary judgment. And because the expert report is now moot, I deny without prejudice Motorsport's bid to exclude it.